**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

**KOFIE AKIEM JONES**,

                    Petitioner,

**v.**                                                    CIVIL ACTION NO.: 1:13-CV-267
                                                          CRIMINAL ACTION NO.: 1:03-CR-47
                                                          (STAMP)

**UNITED STATES OF AMERICA,**

                    Respondent.

**REPORT AND RECOMMENDATION**

**I.      INTRODUCTION**

This case arises from Kofie Akiem Jones's ("Petitioner") *pro se* Motion to Vacate,

Set Aside, or Correct Sentence by a Person in Federal Custody. Because Petitioner's

claims are procedurally defaulted or without merit, the undersigned recommends that

Petitioner's motion be denied and dismissed with prejudice.

**II.      FACTS & PROCEDURAL HISTORY**

**A.  Petitioner's Conviction, Sentence, and Appeal**

In 2004, a jury found Petitioner guilty of six separate counts of a multi-defendant

criminal indictment. Specifically, Petitioner was found guilty of (1) conspiracy to rob

banks and interfere with commerce by threats and violence, (2) attempted bank

robbery, (3) armed bank robbery, (4) possession of a firearm in furtherance of a crime of

violence, (5) interference with commerce by threats and violence, and (6) possession of

a firearm in furtherance of a crime of violence. Because Petitioner was a three-strike

offender under 18 U.S.C. § 3559(c)(1)(F), he was sentenced to six concurrent life

sentences followed by six concurrent five-year terms of supervised release. See United

States v. Jones, 319 F. Supp. 2d 703 (N.D. W. Va. 2004) [hereinafter Jones I]. The United States Court of Appeals for the Fourth Circuit affirmed this Court's judgment and sentence on appeal. See United States v. Jones, 122 F. App'x 27 (4th Cir. 2005) [hereinafter Jones II].

### B. Petitioner's First § 2255 Motion

Having exhausted his rights on appeal, Petitioner filed his first motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence in 2006, arguing that he received ineffective assistance of counsel. See generally Motion Pursuant to 28 U.S.C. § 2255 to Vacate Conviction & Sentence, ECF No. 186.[1] A United States Magistrate Judge held an evidentiary hearing and issued a Report and Recommendation recommending that Petitioner's § 2255 motion be denied and the case dismissed with prejudice. Report & Recommendation, ECF No. 224. After reviewing Petitioner's objections, the District Court affirmed and adopted the Magistrate Judge's Report and Recommendation and denied Petitioner's motion and dismissed the case with prejudice. Jones v. United States, No. 1:03CR47-01, 2008 WL 4643909 (N.D. W. Va. Oct. 20, 2008) [hereinafter Jones III]. The Fourth Circuit denied Petitioner's motion for a certificate of appealability and dismissed his appeal. United States v. Jones, 337 F. App'x 297 (4th Cir. 2009) [hereinafter Jones IV].

### C. Petitioner's Second and Third § 2255 Motions

In 2011, Petitioner filed a second motion under § 2255 to vacate, set aside, or correct sentence, arguing that resentencing was necessary because one of his prior convictions used to enhance his sentence (one of the "three strikes") had since been

---

[1] All citations to ECF numbers in this report and recommendation refer to Criminal Action No.1:03cr47-1.

vacated. See generally Motion to Vacate under 28 U.S.C. 2255, ECF No. 247. This Court incorrectly denied Petitioner's motion based on the mistaken conclusion that it was "second or successive." See Jones v. United States, No. 1:03cr47–1, 2011 WL 2357867 (N.D. W. Va. Apr. 28, 2011) [hereinafter Jones V]; Jones v. United States, No. 1:03CR47–01, 2011 WL 2413576 (N.D. W. Va. June 10, 2011) [hereinafter Jones VI].

The following year, Petitioner filed a third motion under § 2255, reiterating the same claim made in his 2011 habeas petition. See generally Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 265. A United States Magistrate Judge issued a Report and Recommendation recommending that Petitioner's third § 2255 motion be granted and the matter be scheduled for resentencing. Jones v. United States, No. 1:03cr47, 2012 WL 2393738 (N.D. W. Va. June 1, 2012) [hereinafter  Jones VII]. The District Court affirmed and adopted the Magistrate Judge's Report and Recommendation, granted Petitioner's third § 2255 motion, and scheduled the matter for resentencing. Jones v. United States, No. 1:03CR47, 2012 WL 2396362 (N.D. W. Va. June 25, 2012) [hereinafter Jones VIII]. Petitioner was later resentenced to 535 months imprisonment and 5 years of supervised release, which was upheld on appeal. See United States v. Jones, 517 F. App'x 143 (4th Cir. 2013) [hereinafter Jones IX].

### D.  Petitioner's Fourth § 2255 Motion

After Petitioner was resentenced, in December 2013, he filed his fourth motion under § 2255 to vacate, set aside, or correct sentence. See Motion to Vacate under 28 U.S.C. 2255, ECF No. 308. Although Petitioner's fourth motion presented three claims

for relief, the primary issue was whether Petitioner's fourth § 2255 was "second or successive" under Magwood v. Patterson, 561 U.S. 320 (2010), which was then an issue of first impression in the Fourth Circuit.

The undersigned issued a Report and Recommendation recommending that the motion be denied as second or successive. Jones v. United States, No. 1:03CR47–1, 2015 WL 12642209 (N.D. W. Va. Oct. 27, 2015) [hereinafter Jones X]. After vacating its initial memorandum opinion and allowing Petitioner the opportunity to object to the Report and Recommendation, Jones v. United States, No. 1:03CR47, 2016 WL 755643 (N.D. W. Va. Feb. 25, 2016) [hereinafter Jones XI], the District Court issued a second memorandum opinion affirming and adopting the Report and Recommendation and granting Petitioner's motion for a certificate of appealability, among other things, Jones v. United States, No. 1:03CR47-01, 2016 WL 1183137 (N.D. W. Va. Mar. 28, 2016) [hereinafter Jones XII]. In its memorandum opinion affirming and adopting the Report and Recommendation, the District Court concluded that because Petitioner's resentencing was not connected to his underlying conviction, his "judgment of conviction still constitute[d] a final judgment for purposes of his § 2255 motion collaterally attacking that conviction." Id. at 3.

On appeal, the Fourth Circuit vacated the District Court's orders and remanded the case for further proceedings in light of its recent decision in In re Gray, 850 F.3d 139 (4th Cir. 2017). United States v. Jones, 681 F. App'x 294 (4th Cir. 2017) [hereinafter Jones XIII]. There, the Fourth Circuit "joined the chorus of [its] sister circuits in finding that when a habeas petition is the first to challenge a new judgment, it is not second or successive . . . regardless of whether it challenges the sentence or

4

the underlying conviction." Id. at 294.

On remand from the Fourth Circuit, the District Court recommitted Petitioner's fourth motion under § 2255 to the undersigned for further proceedings. Order Recommitting Matter to Magistrate Judge, ECF No. 401. His fourth § 2255 motion claims that he is entitled to relief on three grounds: (1) he received ineffective assistance of counsel; (2) his Sixth Amendment rights were violated at sentencing under Alleyne v. United States, 570 U.S. 99 (2013), because he was convicted of a second violation of § 924(c) without being specifically charged with a "second" violation and without a jury finding a "second" violation; and (3) his due process rights were violated because the jury instructions were incorrect. See generally ECF No. 308.

In response, the Government argues that Petitioner's ineffective assistance of counsel claim is procedurally defaulted because it was available to him when he filed his first § 2255 motion alleging ineffective assistance of counsel and when he challenged his new sentence and judgment on direct appeal. Motion for Judgment on the Present Record, ECF No. 399 at 4–8. Likewise, the Government argues that Petitioner's Alleyne claim is procedurally defaulted because he did not raise it when he challenged his new sentence and judgment on direct appeal. Id. at 8. Further, even if Petitioner's Alleyne claim is not procedurally defaulted, the Government argues that it is nevertheless without merit. Id. at 8–9. Lastly, the Government argues that Petitioner's Rosemond claim is procedurally defaulted because it was not raised on direct appeal. Id. at 9. If not procedurally defaulted, the Government insists that it, too, is without merit. Id. at 9–11.

After reviewing the record and considering the parties' evidence and argument

5

from the March 12, 2018 evidentiary hearing, the undersigned addresses each argument, in turn, below.

### III.   DISCUSSION

#### A.  Legal Standard

Pursuant to 28 U.S.C. § 2255, a prisoner may file a motion challenging the sentence imposed by a federal court, "if (1) the sentence violates the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence 'is otherwise subject to collateral attack.'" Beyle v. United States, 269 F. Supp. 3d 716, 725 (E.D. Va. 2017) (quoting 28 U.S.C. § 2255(a)). "A sentence is 'otherwise subject to collateral attack,' if a petitioner shows that the proceedings suffered from 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Id. (quoting United States v. Addonizio, 442 U.S. 178, 185 (1979)). "A petitioner bears the burden of proving one of those grounds by a preponderance of the evidence." Id. (citing Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)). "If he satisfies that burden, the court may vacate, set aside, or correct the sentence." Id. (citing 28 U.S.C. § 2255(b)). "However, if the motion, when viewed against the record, shows that the petitioner is entitled to no relief, the court may summarily deny the motion." Id. (citing Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970)).

#### B.  Petitioner's Fourth § 2255 Motion is Without Merit

##### 1.  Petitioner's Ineffective Assistance of Counsel Claim

As outlined above, Petitioner's instant motion claims that he is entitled to relief because he received ineffective assistance of counsel. ECF No. 308 at 3–27. In

response, the Government insists that Petitioner's claim is procedurally defaulted because he did not raise it in his first § 2255 motion or on direct appeal of his resentencing. ECF No. 399 at 4–8.

The Government's argument raises a unique question: Can an ineffective assistance of counsel claim raised in a fourth-in-time § 2255 motion that challenges the original conviction be procedurally defaulted even though it is not "second or successive" for purposes of 2244(b) because of an intervening judgment? Although the answer is likely "yes," Magwood v. Patterson, 561 U.S. 320, 331 (2010) ("If, however, Magwood's application was not second or successive, it was not subject to § 2244(b) at all, and his fair-warning claim was reviewable (absent procedural default)." (emphasis added)); id. at 340 ("If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention—whether in trial, appellate, or habeas proceedings, as state law may require—procedural default will bar federal review." (emphasis added)), the Government's arguments do not compel that conclusion here.

First, the Government's argument that Petitioner's ineffective assistance of counsel claim is procedurally defaulted because he did not raise it in his first § 2255 motion is foreclosed by In re Gray, 850 F.3d 139. In Gray, the United States Court of Appeals for the Fourth Circuit held that a habeas petition challenging a new judgment is not "second or successive" under § 2244(b), "regardless of whether it challenges the sentence or the underlying conviction." 850 F.3d at 143 (emphasis added). In support, the Fourth Circuit explained that its conclusion was dictated by Magwood,

which explicitly rejected a "claims-based approach."[2] Id. Because Petitioner was resentenced, his instant § 2255 motion is not second or successive under § 2244(b), regardless of whether it raises claims that challenge the underlying conviction. Gray, 850 F.3d at 143. To hold that Petitioner's ineffective assistance of counsel claim is procedurally defaulted for the same reason that his motion is not second or successive would effectively circumvent the Fourth Circuit's decision in Gray.

Second, the Government's argument that Petitioner's ineffective assistance of counsel claim is procedurally defaulted because he did not raise it in his direct appeal of his intervening judgment is similarly unavailing. In the Fourth Circuit, it is well established that a claim of ineffective assistance of counsel should be raised in a § 2255 motion—rather than on direct appeal—"unless the record conclusively shows ineffective assistance." United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992). Thus, absent a conclusive showing, a claim of ineffective assistance of counsel should be raised in a § 2255 motion rather than on direct appeal of an intervening judgment. Although Petitioner, here, could have asserted his ineffective assistance of counsel claim on direct appeal of his intervening judgment, his claim is not procedurally defaulted because he chose to reserve that claim for the instant § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997).

Because Petitioner's ineffective assistance of counsel claim is not procedurally defaulted, the undersigned now turns to the merits of said claim.

---

[2] Under a claims-based approach, courts would determine which claims were challenging the new judgment or sentence and which were challenging the original judgment or sentence. See Magwood v. Culliver, 555 F.3d 968, 975 (11th Cir. 2009), reversed by Patterson, 561 U.S. 320. The former would proceed as a "first petition," and the latter would be precluded as "second or successive" petition. See id. at 975–76.

It is well established that the Sixth Amendment guarantees defendants the right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970). To succeed on an ineffective assistance of counsel claim, the "petitioner must show, by a preponderance of the evidence, that (1) 'counsel's performance was deficient,' and (2) 'the deficient performance prejudiced the defense.'" Beyle, 269 F. Supp. 3d at 726 (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). "The Petitioner must 'satisfy both prongs, and a failure of proof on either prong ends the matter.'" Id. (quoting United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004)). "Unsubstantiated and largely conclusory statements are insufficient to carry a petitioner's burden as to the two prongs of this test." Id. (cleaned up).

A petitioner satisfies the first prong when he shows that counsel's conduct "fell below an objective standard of reasonableness . . . under prevailing professional norms." Strickland, 466 U.S. at 687–88. However, "[j]udicial scrutiny of counsel's performance must be highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id.

To satisfy the second prong, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. To do so, "a petitioner must demonstrate that the error

9

worked to his actual and substantial disadvantage, not merely that the error created a possibility of prejudice." Beyle, 269 F. Supp. 3d at 727 (cleaned up).

Here, Petitioner argues that his retained counsel, James M. Pool (now deceased), was constitutionally ineffective for no less than seventeen (plus) reasons. ECF No. 308 at 3–27. Specifically, Petitioner argues that Mr. Pool was ineffective because he (1) only met with Petitioner once before trial; (2) did not discuss discovery with Petitioner; (3) did not tell Petitioner that his co-defendants would testify against him at trial; (4) did not discuss trial strategy with Petitioner prior to trial; (5) lacked knowledge to effectively conduct voir dire; (6) did not object to the Government's use of evidence not listed on its pretrial exhibit list; (7) did not move to dismiss the indictment, or counts listed in the indictment (for a variety of reasons); (8) did not investigate whether bank deposits were insured by Federal Deposit Insurance Corporation ("FDIC"); (9) failed to investigate Petitioner's alibi defense; (10) failed to investigate a defense based on mental disease/disorder; (11) did not file a motion to suppress evidence based on the allegedly warrantless search of a car and apartment; (12) did not argue that the robberies were a single offense under § 924(c); (13) did not argue that his co-conspirators' use of firearm was not foreseeable; (14) did not request a jury instruction that violating § 924(c) is a specific intent crime; (15) did not argue that the crime charged in Count Six was not a "second" offense under § 924(c); (16) did not communicate a plea offer to Petitioner; and (17) lied to Petitioner about never being temporarily disbarred before he was retained as counsel. Id. Each claim is without merit.

### a. Limited Communication

Mr. Pool's limited communication directly with Petitioner did not render Mr. Pool's assistance constitutionally ineffective. "Good communication does not guarantee effective assistance of counsel, and bad communication does not guarantee ineffective assistance of counsel." United States v. Lott, 310 F.3d 1231, 1252 (10th Cir. 2002). And, the Sixth Amendment does not "guarantee[] a 'meaningful relationship' between an accused and his counsel." Hutchins v. Garrison, 724 F.2d 1425, 1430 (4th Cir. 1983). Although Mr. Pool only met with Petitioner once, in person, he concedes that he spoke to Mr. Pool before and after several court appearances and Petitioner's family spoke to Mr. Pool about Petitioner's case on several other occasions before trial. Tellingly, Petitioner does not specify "what effect additional communication with counsel and further trial preparation would have had on the outcome of the proceedings or what evidence should have been reviewed." United States v. Duffy, No. 05–07–WO, 2007 WL 2071780, at *3 (E.D. Ky. June 26, 2017). Nor does Petitioner allege any defect in Mr. Pool's performance at trial "that was the result of their supposed inability to communicate." Garrison, 724 F.2d at 1431. Even if Mr. Pool's limited communication with Petitioner did render Mr. Pool's assistance constitutionally ineffective, Petitioner has not satisfied the second Strickland prong: In other words, Petitioner fails to show that the result of the proceeding would be different. Because this generalized grievance is not enough to satisfy the two-prong Strickland standard, Petitioner's claim is without merit.

### b.  Discussing Discovery

Mr. Pool's failure to discuss discovery with Petitioner did not render Mr. Pool's assistance constitutionally ineffective. Again, Petitioner does not specify what discovery Mr. Pool failed to discuss with him or what effect discussing that discovery would have had on the outcome of Petitioner's trial. Nor does Petitioner allege any defect in Mr. Pool's performance at trial that was the result of his supposed failure to discuss discovery with Petitioner. Without more, the undersigned cannot conclude that this alleged failure rendered Mr. Pool's assistance constitutionally ineffective. Even if it was, Petitioner, again, fails to satisfy the second Strickland prong. Because he fails to show how the result of his trial would have been different. Further, a better understanding of discovery would likely not have changed the outcome at trial. What it may have done is convince Petitioner to plead guilty because of the overwhelming weight of the evidence against him. But critically, Petitioner does not allege that he would have pleaded guilty had he had a better understanding of the evidence against him. Nor would this Court find it convincing: Based on the evidence of record, Petitioner has maintained his innocence before, during, and after trial. Accordingly, Petitioner's generalized claim cannot satisfy the two-prong Strickland standard and is without merit.

### c.  Co-Defendants Testifying at Trial

Mr. Pool was not constitutionally ineffective for failing to tell Petitioner that his co-defendants were going to testify against him at trial. Like his other claims, Petitioner does not allege how this information would have changed the outcome of his trial. Nor does he allege that he would have pleaded guilty had he been told this information (assuming that was even a possibility). Even if he had, this Court would not find it

convincing. Again, Petitioner has maintained his innocence before, during, and after trial. Thus, his argument is without merit.

### d. Trial Strategy

Mr. Pool was not constitutionally ineffective for failing to discuss trial strategy with Petitioner before trial. As a threshold matter, Petitioner does not argue that Mr. Pool's trial strategy, itself, was constitutionally ineffective. Rather, Petitioner only argues that Mr. Pool's assistance was constitutionally deficient for failing to discuss it before trial. This argument is merely a regurgitation of Petitioner's arguments above. But like those arguments, Petitioner fails to allege what effect advance discussion of trial strategy would have had on the outcome of his trial. And because Petitioner does not argue that Mr. Pool's trial strategy, itself, was constitutionally ineffective, there's no reason to conclude that a constitutionally effective trial strategy would have resulted in a different outcome at trial had it been communicated to Petitioner in advance. Therefore, Petitioner's claim is without merit.

### e. Voir Dire

Mr. Pool was not constitutionally ineffective based on his performance during voir dire. Although Petitioner claims that Mr. Pool failed to challenge some of the prospective jurors for cause, forcing him to use peremptory strikes instead, Petitioner fails to allege any factual basis to support this allegation. For example, Petitioner does not allege that Mr. Pool failed to strike a prospective juror who admitted bias. Without more, there is no factual basis (other than Petitioner's conclusory allegations) for the Court to determine whether Mr. Pool's performance during voir die was constitutionally ineffective. Accordingly, Petitioner's claim is without merit.

13

### f. Evidence at Trial

Mr. Pool was not constitutionally ineffective for not objecting to the Government's use of evidence that was not identified on its pretrial exhibit list. Tellingly, Petitioner does not allege what that evidence was or how he was prejudiced as a result. This allegation plainly fails to satisfy the two-prong <u>Strickland</u> standard and is, thus, without merit.

### g. Moving to Dismiss Indictment or Counts Listed in Indictment

Mr. Pool was not constitutionally ineffective for not moving to dismiss the indictment or counts listed in the indictment. Petitioner argues that Mr. Pool should have filed a motion to dismiss (1) Counts One, Two, Five, and Six because those counts were dismissed as to his codefendants; (2) Count Two because it did not charge a federal offense; (3) Count Three because the Government presented no proof that Petitioner was guilty of aggravated bank robbery; (4) Count Three because it did not allege use of a "weapon"; and (5) Count Three because there was no evidence connecting Petitioner to the bank robbery.

First, any motion to dismiss Counts One, Two, Five, and Six because those counts had been dismissed as to two of his codefendants would not only be without merit, but also frivolous. Here, two of Petitioner's codefendants pleaded guilty to Counts Three and Four and had the remaining counts dismissed after sentencing, as required by their plea agreements. The fact that the four remaining counts were dismissed according to their plea agreements does <u>not</u> mean the factual basis for those charges no longer exists, nor does it require the Government to obtain a superseding indictment omitting the dismissed parties' names. All it means is that the Government exercised its

14

discretion to no longer pursue those charges against those defendants in exchange for their guilty pleas. In short, the guilty pleas of Petitioner's two codefendants had absolutely no effect on the factual basis underlying the charges against Petitioner, including any overt acts involving those codefendants. Because this motion to dismiss would be frivolous, Mr. Pool was not constitutionally ineffective for not filing the same.

Second, any motion to dismiss Count Two because it supposedly did not charge a federal crime would, too, be frivolous. Petitioner argues that Count Two did not charge a federal crime because it did not indicate whether the bank deposits were federally insured by the FDIC. Although Petitioner correctly notes that Count Two does not allege that the Bruceton Bank deposits were federally insured and Count Three does allege that the Huntington Bank deposits were federally insured, Petitioner inexplicably assumes that federal insurance must be a prerequisite to committing the federal crime of bank robbery, or, in his case, attempted bank robbery, which is the federal crime alleged in Count Two. It is plainly not.

Count Two alleged attempted bank robbery in violation of 18 U.S.C. §§ 2, 2113(a), and Pinkerton v. United States, 328 U.S. 640 (1946), and Count Three alleged armed bank robbery in violation of 18 U.S.C. §§ 2, 2113(a), (d), and Pinkerton, 328 U.S. 640. To be guilty of attempted bank robbery in violation of § 2113(a) and armed bank robbery in violation of §§ 2113(a) and (d), the prosecution has to prove, among other things, that the bank that was the victim of the alleged crime was (1) "any member bank of the Federal Reserve System," (2) "any bank, banking association, trust company, savings bank, or other banking institution organized under the laws of the United States," or "any institution the deposits of which are insured by the [FDIC]." 18 U.S.C.

15

§ 2113(f). In other words, having your deposits insured by the FDIC is only <u>one</u> way a bank is a "bank" for purposes of § 2113. Logically, then, it follows that the Bruceton Bank need not have its deposits insured by the FDIC to be considered a "bank" under § 2113. Because Bruceton Bank need not insure its deposits to be a bank under § 2113, Mr. Pool was not constitutionally ineffective for not moving to dismiss Count Two on that basis.

Third, any motion to dismiss Count Three because the Government ostensibly did not present evidence that Petitioner was guilty of armed bank robbery is without merit. Petitioner's argument blatantly ignores the wealth of evidence presented against him at trial, including the testimony of two of his codefendants. <u>See</u> Trial Trs., ECF Nos. 174–77. And the Court will not repeat it here. Because the Government presented more than enough evidence at trial to show that Petitioner was guilty of Count Three beyond a reasonable doubt, Mr. Pool was not constitutionally ineffective for not moving to dismiss Count Three for lack of evidence.

Fourth, any motion to dismiss Count Three because it did not allege the use of a "weapon" is frivolous. Petitioner argues that he cannot be guilty of armed bank robbery because the indictment did not allege the use of a "weapon." But the indictment does just that: Count Three plainly alleged that Petitioner and his codefendants,

> aided and abetted each other, did unlawfully, knowingly and intentionally by force and violence and by intimidation, take from the person and presence of another money belonging to, in the care, custody, control, management and possession of the Huntington Bank, the deposits of which were insured by the [FDIC], and in committing such offense assaulted a bank employee <u>by the use of a dangerous weapon</u>.

16

Indictment, ECF No. 31 at 4 (emphasis added). Because Count Three alleges the use of a dangerous weapon, Mr. Pool was not constitutionally ineffective for not moving to dismiss Count Three on that basis.

And fifth, Mr. Pool was similarly not constitutionally ineffective for not moving to dismiss Count Three because there was supposedly no evidence connecting Petitioner to the armed bank robbery. Again, the Government presented a wealth of evidence at trial connecting Petitioner to the armed bank robbery, including the testimony of two of his codefendants. See Trial Trs., ECF Nos. 174–77. Because the Government presented more than enough evidence connecting Petitioner to the armed robbery, his argument is without merit.

### h.  Bank Deposits Insured by FDIC

Mr. Pool was not constitutionally ineffective for not investigating whether Huntington Bank's deposits were insured by the FDIC. Even if Petitioner satisfies the first Strickland prong—which he does not—he still fails to satisfy the second. Regardless of his counsel's efforts, the Government introduced two exhibits at trial proving that both banks in question (and their respective branches) were insured by the FDIC on July 19, 2003, the day when the armed bank robbery and attempted armed bank robbery were committed. Trial Tr., ECF No. 174-1 at 19–20. Because the Government presented evidence at trial proving that both banks were insured by the FDIC on the date in question, the result of the case would not be different. Therefore, Plaintiff's claim is without merit.

### i.  Alibi Defense

Mr. Pool was not constitutionally ineffective for failing to investigate Petitioner's alleged alibi defense. Petitioner claims that Mr. Pool failed to investigate Petitioner's alibi defense, an alibi that would have proved that he was at Mardana Shaw's apartment during the time the robberies were committed. Conveniently, Petitioner presented the same argument in his first § 2255 motion, which was denied, dismissed, and upheld on appeal. ECF No. 224; <u>Jones III</u>, 2008 WL 4643909; <u>Jones IV</u>, 337 F. App'x 297. It suffers the same fate here.

As this Court previously noted, "the reasonableness of counsel's actions may be determined or substantially influenced by the Defendant's own statements or actions. Counsel's actions are usually based, quite properly, on . . . information supplied by the Defendant. In particular, what investigation decisions are reasonable depends critically on such information." ECF No. 224 at 15. Before trial, Petitioner told his attorney that he was alone in Ms. Shaw's apartment all day. Because he was alone all day, there was no reason for Mr. Pool to conduct an investigation to corroborate it. Indeed, if you're alone, there is no one to corroborate it. But Petitioner insists that a woman and child saw him while he was standing outside of Ms. Shaw's apartment that day.[3] Even if that's true, Mr. Pool was never given any names or addresses of witnesses who could identify, or serve as, an alibi. Nor did Petitioner give Mr. Pool a description of the woman and child or the time frame that Petitioner was allegedly seen outside of the apartment. Without

---

[3] The first Report and Recommendation to address this claim found by the preponderance of the evidence that Petitioner did not tell Mr. Pool about the woman and child before trial. ECF No. 224 at 14. That finding was affirmed and adopted in its entirety and that judgment was upheld on appeal. <u>Jones III</u>, 2008 WL 4643909; <u>Jones IV</u>, 337 F. App'x 297. Accordingly, there is no reason to disturb it here.

this information, there is simply no basis to conduct an investigation. Accordingly, Petitioner's argument is without merit.[4]

### j.  Insanity Defense or Diminished Mental Capacity

Mr. Pool was not constitutionally ineffective for failing to investigate an insanity defense or diminished mental capacity. To the contrary, Petitioner argues that Mr. Pool refused the assistance of a mental health specialist and did not review Petitioner's medical records until sentencing. According to Petitioner, those records conclusively establish the viability of an insanity defense or diminished mental capacity, based on severe depression, seizure disorder, and bipolar disorder. But "[t]he Sixth Amendment does not require a defense attorney to pursue defenses that are not reasonably suggested by the apparent factual circumstances surrounding the crime charged or the subsequent demeanor and conduct of the client." United States ex rel Rivera v. Franzen, 794 F.2d 314, 317 (7th Cir.), cert. denied, 479 U.S. 991 (1986). So, "[t]he critical question here is whether [Petitioner] exhibited signs of mental and emotional instability that made it essential for his counsel to investigate for evidence of mental impairment." Gray v. Branker, 529 F.3d 220, 229 (4th Cir. 2008).

Here, there is no evidence to suggest that Petitioner exhibited signs of mental and emotional instability during the time that the alleged crimes were committed or during the time that he was represented by Mr. Pool. And, there is no evidence to suggest that Petitioner did not understand the nature and the charges against him or

---

[4] Petitioner also argues that Mr. Pool was constitutionally ineffective for waiting until the first day of trial to ask Petitioner who, if anyone, should be subpoenaed as defense witnesses. In support, Petitioner argues that it was too late to investigate and develop an alibi defense. But again, Mr. Pool was not constitutionally ineffective for failing to investigate an alibi defense. And critically, Petitioner does not argue that any other witnesses should have been subpoenaed. Nor does he argue that he suffered any resulting prejudice. Therefore, Petitioner's argument is without merit.

was not capable of assisting in his defense. In fact, Petitioner emphasizes how eager he was to assist Mr. Pool at every turn. But that is not all: There is also no evidence to suggest that Petitioner was seeing a doctor or psychiatrist or taking any medication during that time. Indeed, Petitioner's most recent medical records (regarding Petitioner's mental health) are from 1999—approximately five years before the crimes were committed. ECF 308-8 at 3. There, Rehana Hussain, M.D., reported that Petitioner "denied any thoughts of suicide or harming others" and "is stable medically and psychiatrically." Id. Although Petitioner claims that Mr. Pool ignored his family's affirmative requests to investigate an insanity defense, this argument belies the fact that his family discussed Petitioner's mental health with Mr. Pool in preparation for sentencing, not trial. ECF 308-4 at 2–5. But Petitioner does not argue that Mr. Pool was constitutionally ineffective at sentencing, so the undersigned will not address it. In short, Petitioner's argument is without merit.

### k. Motion to Suppress

Mr. Pool was not constitutionally ineffective for not filing a motion to suppress evidence based on warrantless search of his Mercedes-Benz and Ms. Shaw's apartment. When counsel's alleged deficiency is the failure to litigate a Fourth Amendment claim, the petitioner "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the [outcome] would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986) (emphasis added). "A defendant cannot be prejudiced by failure of his counsel 'to challenge a legal search and seizure.'" United States v. Stubblefield, 931 F. Supp. 2d 118, 127 (D.C. Cir. 2013) (emphasis in

20

original) (quoting <u>United States v. Wood</u>, 879 F.2d 927, 934 (D.C. Cir. 1989)). Thus, "[t]he inquiry turns on whether a hypothetical motion to suppress would have been successful." <u>Williams v. South Carolina</u>, No. 8:08–3598–MBS, 2009 WL 2243711, at *10 (D.S.C. July 24, 2009) (citing <u>United States v. Oakley</u>, 827 F.2d 1023, 1025 (5th Cir. 1987)).

Here, Petitioner's hypothetical motion to suppress would not be successful for two reasons. To start, Petitioner's car was not subjected to a warrantless search. Indeed, local authorities obtained a search warrant for Petitioner's car after his three accomplices were arrested, processed, and taken to jail.[5] Trial Tr., ECF No. 174 at 89–90. In addition, the warrantless entry into Ms. Shaw's apartment to arrest Petitioner was supported by probable cause and exigent circumstances. <u>See</u> <u>Welsh v. Wisconsin</u>, 466 U.S. 740, 749 (1984) ("[W]arrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause and exigent circumstances."). Specifically, after their arrest, Petitioner's three accomplices told police that Petitioner was involved in the armed robberies and was last seen at Ms. Shaw's apartment, where they waited outside. So, the warrantless entry into Ms. Shaw's apartment was supported by probable cause and exigent circumstances: the need to prevent Petitioner's escape. <u>Minnesota v. Olson</u>, 495 U.S. 91, 100 (1990) (recognizing the need to prevent a suspect's escape as an "exigent circumstance"). Because Petitioner's hypothetical motion to suppress would not be successful, his argument that Mr. Pool was constitutionally ineffective for failing to file the same is without merit.

---

[5] Petitioner seems to take issue with their arrest, but those arrests were supported by probable cause. <u>See United States v. Williams</u>, 10 F.3d 1070, 1073 (4th Cir. 1993) ("Police officers can make warrantless arrests as long as they act on the basis of probable cause.").

### I.   Whether Convictions Were Single § 924(c) Offense

Mr. Pool was not constitutionally ineffective for failing to argue that the armed robberies—charged in the same indictment and tried together—were one offense under § 924(c). Simply stated, charging crimes in the same indictment and trying them in the same trial has no effect on whether they constitute a single offense under § 924(c). If it did, the Government would have to prosecute the same individual in separate cases, which would be nothing but a waste of government resources. Not to mention, a waste of limited judicial resources. Further, Petitioner's convictions for armed robbery of Huntington Bank (Count Three) and interfering with commerce by threats and violence (Count Five) were not a single offense under § 924(c) because they were, in fact, separate crimes: The Government did not need to rely on the same facts of Petitioner's armed robbery of Huntington Bank to convict him of the separate (but related) crime of interfering with commerce by threats and violence, or vice versa. See United States v. Henning, 906 F.2d 1392, 1399 (10th Cir. 1990) (discussing whether "underlying crimes constituted a single offense and single crime of violence under § 924(c)"). Indeed, if Petitioner and his co-conspirators did not rob the Giant Eagle store (interfering with commerce by threats and violence), the Government could still convict them of armed robbery of the Huntington Bank. Accordingly, Petitioner's argument is without merit, and Mr. Pool was not ineffective for failing to raise it.

### m. Whether Use of Firearm Was Foreseeable

Mr. Pool was not constitutionally ineffective for failing to argue that Petitioner could not reasonably foresee that his co-conspirators would use a firearm while robbing Huntington Bank and Giant Eagle. What Petitioner fails to recognize is that the

Government presented evidence at trial to show that the firearm used during the armed robberies was Petitioner's firearm, and Petitioner gave that firearm to one of his co-conspirators, James Harkum, before they robbed Huntington Bank and Giant Eagle. Trial Tr., ECF No. 175-1 at 71. Because Petitioner gave his co-conspirator the firearm, it was plainly foreseeable that his co-conspirator would use it when attempting to rob the first bank and robbing the second bank. Because the use of firearm was plainly foreseeable, Mr. Pool was not ineffective for arguing otherwise. Even if he was, Petitioner fails to demonstrate how the outcome of the proceeding would have been different. Thus, Petitioner's argument is without merit.

### n.  Jury Instruction for Specific Intent Crime

Mr. Pool was not constitutionally ineffective for not requesting a jury instruction that the use of a firearm during or in relation to a crime of violence requires specific intent. Contrary to Petitioner's belief, Section 924(c) is a general intent crime, not a specific intent crime. See, e.g., United States v. Coyle, 998 F.2d 548, 551 (8th Cir. 1993) (holding that Section 924(c) is not a specific intent crime); United States v. Brown, 915 F.2d 219, 224–26 (6th Cir. 1990) (holding same); United States v. Peralta, 930 F. Supp. 1523, 1529–30 (S.D. Fla. 1996) ("[T]he phrase "in relation to" cannot be read to evince a Congressional intent to require proof of some kind of specific intent in order to secure a conviction under section 924(c)."); see also United States v. Wilson, 884 F.2d 174, 179 (5th Cir. 1989) ("[W]e conclude that the requisite mental state for a violation of § 924(c) is knowledge of the facts constituting the offense."). Because § 924(c) is a general intent crime, Mr. Pool was not ineffective for failing to request a specific intent jury instruction.

### o.  Count Six as "Second" § 924(c) Offense

Mr. Pool was not constitutionally ineffective for not objecting to the Court's use of the crime charged in Count Six as a "second" offense under § 924(c). Petitioner argues that Mr. Pool was ineffective because using the crime charged in Count Four as the "second" offense would have resulted in a lower sentence. But any effect on Petitioner's sentence is irrelevant because he cannot satisfy the first Strickland prong. The crime charged in Count Six was second in time to the crime charged in Count Four. Logically, then, it follows that the crime charged in Count Six was the "second" offense under § 924(c). Because Count Six was the second § 924(c) offense, Mr. Pool was not ineffective for arguing to the contrary.

### p.  Communicating Plea Offer

Mr. Pool was not constitutionally ineffective for not communicating a plea offer to Petitioner. Because the record was not clear, the undersigned held an evidentiary hearing to determine whether Petitioner was offered a plea agreement. Based on the evidence presented, the undersigned finds that Petitioner was never offered a plea agreement. Logically, then, Mr. Pool cannot be constitutionally ineffective for failing to convey an offer that didn't exist.[6] So, Petitioner's argument is without merit.

### q.  Temporary Disbarment

Mr. Pool was not constitutionally ineffective for not disclosing the fact that he had been temporarily disbarred from the Massachusetts State Bar. As a threshold matter, the undersigned is hardly convinced that discovering this fact—which Petitioner himself

---

[6] Nor is there any reason for the undersigned to address the three-part test articulated in Lafler v. Cooper, 566 U.S. 156 (2012). In Lafler, the defendant argued that he rejected a plea offer based on his counsel's ineffective advice. 566 U.S. at 163–64. Here, there was no plea offer to accept or reject.

24

describes as a "revelation"—"triggered" his memory that he had affirmatively asked Mr. Pool whether he had ever been disbarred before hiring him. Indeed, Petitioner concedes that he hired Mr. Pool after hearing that he was a good attorney from other inmates Petitioner met while incarcerated. ECF No. 308 at 27 ("Other than the word of those inmates, [Petitioner] possessed no other information about Mr. Pool."). Nor was this information that Mr. Pool had to affirmatively disclose absent any inquiry. Although Mr. Pool was disbarred from the Massachusetts State Bar in 1984, his membership was reinstated in 1988—long before he was retained by Petitioner in 2003. Further, Petitioner fails to allege how Mr. Pool's temporary disbarment had any effect on his performance at trial or sentencing. Accordingly, Petitioner's claim is without merit.

### 2.  Petitioner's Alleyne Claim

In his second ground for relief, Petitioner insists that he was "[charged and convicted of a second § 924(c) offense without it being included in the Indictment (as required by the Fifth Amendment), or found to exist beyond a reasonable doubt (as required by the Sixth Amendment)]." ECF No. 308 at 29. More specifically, Petitioner claims that the Supreme Court's decision in Alleyne v. United States, 570 U.S. 99 (2013)[7] required the jury to find, beyond a reasonable doubt, that one of his two charged § 924(c) counts (Counts Four and Six) constituted a second offense under § 924(c)(1)(C)(i) before the Court could impose "a term of imprisonment of not less than

---

[7] In Alleyne, the Supreme Court held that any "[f]acts that increase the mandatory minimum sentence are . . . elements and must be submitted to the jury and found beyond a reasonable doubt." 570 U.S. at 108.

25 years." 18 U.S.C. § 924(c)(1)(C)(i); <u>see</u> ECF No. 308 at 29–30.[8] This claim fails for two reasons.

First, Petitioner's claim is procedurally defaulted. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998) (cleaned up). Accordingly, a petitioner cannot raise an argument in a post-conviction collateral attack that he did not raise earlier on direct appeal. <u>See, e.g.</u>, <u>Sanchez-Llamas v. Oregon</u>, 548 U.S. 331, 351 (2006) (citing <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003); <u>Bousley</u>, 523 U.S. at 621). But courts may excuse procedural default when a petitioner demonstrates "cause" and actual "prejudice," or actual innocence. <u>Bousley</u>, 523 U.S. at 622 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 485 (1986); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977)); <u>see United States v. Frady</u>, 456 U.S. 152, 167–68 (1982); <u>United States v. Mikalajunas</u>, 186 F.3d 490, 492–93 (4th Cir. 1999); <u>United States v. Maybeck</u>, 23 F.3d 888, 891–92 (4th Cir. 1994). "'Cause' to excuse a procedural default requires some objective factor external to the defense that impeded counsel's efforts to comply with the procedural requirements to raise a claim." <u>Bennett v. United States</u>, No. 3:16-cv-520-RJC, 2018 WL 1187783, at *3 (W.D.N.C. Mar. 7, 2018) (cleaned up) (citing <u>Murray</u>, 477 U.S. at 488; <u>Mikalajunas</u>, 186 F.3d at 490). "For instance, 'cause' is established 'where a constitutional claim is so novel that its legal basis is not reasonably available to counsel.'" <u>Id.</u> (quoting <u>Reed v. Ross</u>, 468 U.S. 1, 16 (1984)). "Actual prejudice is then

---

[8] Because a "second" § 924(c) conviction would increase the mandatory minimum from seven years (in Petitioner's case, the jury found beyond a reasonable doubt that a firearm was "brandished" during the commission of Counts Four and Six, so the seven-year, not the five-year, minimum applied) to twenty-five years, <u>compare</u> § 924(c)(1)(A)(ii) <u>with</u> § 924(c)(1)(C)(i), Petitioner argues that <u>Alleyne</u> required the jury to find that Count Four or Six was a "second" § 924(c) conviction beyond a reasonable doubt before the Court could increase the mandatory minimum sentence. <u>See</u> ECF No. 308 29–30.

shown by demonstrating that the error worked to petitioner's 'actual and substantial disadvantage,' rather than just creating a possibility of prejudice." Id. (quoting Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997)).

Because he did not raise his Alleyne claim in his direct appeal of his original or intervening judgment, see generally Jones IV, 337 F. App'x 297; Jones IX, 517 F. App'x 143, Petitioner's claim is procedurally barred unless he demonstrates "cause" and actual "prejudice," or actual innocence, Bousley, 523 U.S. at 622. Here, Petitioner has not demonstrated "cause," and he fails to allege actual innocence. Although Alleyne was not decided until after the Fourth Circuit affirmed Petitioner's intervening judgment on direct appeal, the arguments that prevailed in Alleyne were hardly novel. Indeed, the Supreme Court foreclosed the same arguments in Harris v. United States, 536 U.S. 545 (2002), overruled by Alleyne, 570 U.S. 99, but Harris was (arguably) inconsistent—in terms of logic—with the Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000). See Harris, 530 U.S. at 569 (Breyer, J., concurring in part and concurring in the judgment) ("I cannot easily distinguish [Apprendi], from this case in terms of logic."); id. at 579 (Thomas, J., dissenting) ("[T]here are no logical grounds for treating facts triggering mandatory minimums any differently than facts that increase the statutory maximum."). Accordingly, it cannot be said that the same arguments that eventually prevailed in Alleyne were "novel." Because Petitioner cannot demonstrate "cause" and fails to allege actual innocence, Petitioner's claim is procedurally defaulted for not raising it on direct appeal of his original or intervening judgment.

Second, even if Petitioner's Alleyne claim is not procedurally defaulted, it is nevertheless without merit. In Almendarez-Torres v. United States, 523 U.S. 224

(1998), "the Supreme Court held that the Sixth Amendment does not require the government to set forth in the indictment and prove beyond a reasonable doubt the fact of a prior conviction." United States v. Mack, 729 F.3d 594, 609 (6th Cir. 2013). "Finding that a defendant's convictions were 'second or subsequent' is the same as finding that a defendant had a prior conviction, and the issue remains governed by Almendarez–Torres." United States v. King, 751 F.3d 1268, 1280 (11th Cir. 2014) (citing Mack, 729 F.3d at 609)), cert. denied, 135 S. Ct. 389 (2014). "Although Almendarez–Torres may stand on shifting sands, the case presently remains good law and we must follow it until the Supreme Court expressly overrules it." Mack, 729 F.3d at 609 (citing Alleyne, 570 U.S. at 111 n.1). Accordingly, the jury was not required to find that one of Petitioner's charged § 924(c) counts was a "second" § 924(c) conviction before the court imposed "a term of imprisonment of not less than 25 years" pursuant to § 924(c)(1)(C)(i); the fact that the jury convicted Petitioner—beyond a reasonable doubt—of two separate § 924(c) counts (Counts Four and Six) is enough to warrant the heightened mandatory minimum.

### 3.  Petitioner's Third Claim for Relief[9]

In his third ground for relief, Petitioner insists that he "was denied his right to a unanimous jury verdict . . . because the court's jury instructions permitted culpability to be premised on . . . 'aiding & abetting'[] or 'conspiracy' . . . ." ECF No. 308 at 33. Because his criminal liability could be premised on either theory, Petitioner claims that it

---

[9] For whatever reason, the Government characterizes Petitioner's third claim for relief as a Rosemond claim. ECF No. 399 at 9–11. But Petitioner does not argue that he did not have "advance knowledge that a confederate would use or carry a gun during the crime's commission." Rosemond v. United States, 134 S. Ct. 1240, 1243 (2014); see ECF No. 308 at 33. (At least not here.) Rather, Petitioner argues that the jury instructions wrongly allowed the jury to infer culpability on aiding and abetting or conspiracy theories. Accordingly, Petitioner's claim is not a Rosemond claim.

is impossible to know under which theory he was convicted. This claim likewise fails for two reasons.

First, Petitioner's claim is procedurally defaulted. Because Petitioner did not raise this claim on his direct appeal of his original or intervening judgment, see generally Jones IV, 337 F. App'x 297; Jones IX, 517 F. App'x 143, he must demonstrate "cause" and actual "prejudice," or actual innocence, Bousley, 523 U.S. at 622. Here, Petitioner cannot demonstrate cause because challenging jury instructions is hardly novel; nor is the basis on which he challenges the jury instructions. In addition, Petitioner does not allege actual innocence. Accordingly, his claims are procedurally defaulted for not raising it on direct appeal of his original or intervening judgment.

Second, even if Petitioner's claim is not procedurally defaulted, it too is without merit. Critically, "the Supreme Court has held that 'aiding and abetting and Pinkerton are alternative theories by which the government may prove joint criminal liability for a substantive offense.'"[10] United States v. Rosalez, 711 F.3d 1194, 1210 (10th Cir. 2013) (quoting United States v. Zackery, 494 F.3d 644, 649 (8th Cir. 2007) (citing Nye & Nissen v. United States, 336 U.S. 613, 618–20 (1949)). Because the jury was free to convict Petitioner under either theory of criminal liability, his claim that he was denied his right to a unanimous jury verdict based on the allegedly erroneous jury instructions is without merit. See Robinson, 627 F.3d at 954 (explaining that the defendant "must demonstrate that the erroneous instruction given resulted in his conviction, not merely that it was impossible to tell under which [theory] the jury convicted" (emphasis added)).

---

[10] "The Pinkerton doctrine makes a person liable for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy." United States v. Ashley, 606 F.3d 135, 142–43 (4th Cir. 2010).

## IV.   <u>RECOMMENDATION</u>

For the foregoing reasons, I find that Petitioner's claims of error are procedurally defaulted or without merit. Accordingly, I **RECOMMEND** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Civil Action No. 1:13-CV-267, ECF No. 1; Criminal Action No. 1:03-CR-47, ECF No. 308] be **DENIED** and **DISMISSED WITH PREJUDICE**. Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file written objections identifying the portions of the Report and Recommendation to which objections are made and the basis for such objections with the Clerk of the Court. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. <u>See</u> 28 U.S.C. § 636(b)(1); <u>Wright v. Collins</u>, 766 F.2d 841, 845-48 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

Respectfully submitted this 6th day of April, 2018.

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE